2002 WY 118

**Todd Luther NIXON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 01–55.

Supreme Court of Wyoming.

Aug. 5, 2002.

---

Representing Appellant: Todd Luther Nixon, pro se.

Representing Appellee: Hoke MacMillan, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Todd Luther Nixon appeals pro se from the district court's order which denied his post-sentence and post-direct appeal motion to withdraw his guilty pleas filed pursuant to W.R.Cr.P. 32(d). In that motion, Nixon raised several claims of ineffective assistance of trial counsel and a claim that the district court and his trial counsel failed to advise him about mitigation matters he could have presented during the sentencing phase of his capital case. In this appeal,

* Chief Justice at time of expedited conference

Nixon raises those issues and the issue whether the district court erred by not conducting an evidentiary hearing on Nixon's motion to withdraw his guilty pleas. Although the State responds substantively to those issues, it first asks this Court to consider whether Nixon's appeal should be dismissed on grounds that the district court was without jurisdiction to entertain Nixon's post-sentence and post-direct appeal motion to withdraw his guilty pleas.

[¶ 2] Having carefully considered the jurisdictional question raised by the State, we hold that the district court was without jurisdiction to entertain Nixon's post-sentence and post-direct appeal motion to withdraw his guilty pleas. Consequently, we dismiss this appeal.

## FACTS

[¶ 3] In early June of 1997, law enforcement authorities charged Nixon with first degree murder (felony murder in the perpetration of child abuse) in violation of Wyo. Stat. Ann. § 6–2–101(a) and with aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i) arising from the death of his three-year-old, CL. *Nixon v. State,* 4 P.3d 864, 866 (Wyo.2000). As the case proceeded, Nixon changed his pleas of not guilty to pleas of guilty pursuant to a plea agreement with the State. *Id.*

[¶ 4] On August 22, 1997, a written plea agreement between Nixon and the State was consummated pursuant to which the State relinquished its option to seek the death penalty and Nixon entered pleas of guilty to the two charges. *Id.* On October 7, 1997, before sentencing, Nixon filed a motion to withdraw his pleas of guilty. Nixon asserted that his pleas were involuntary because the district court at the August 22 change of plea hearing had erroneously advised him that probation was a possibility although "extremely unlikely." *Id.* at 867. Nixon claimed that this improper and misleading advice influenced his decision to plead guilty. *Id.* at 868. The district court considered Nixon's motion, conceded that the advice was in error, but ruled that the error was harmless beyond a

reasonable doubt given the totality of the record. *Id.* The district court denied Nixon's motion.

[¶ 5]   At the sentencing hearing on October 10, 1997, the district court imposed a sentence of life imprisonment for first degree murder, which was to run concurrent to a sentence of seven to ten years imprisonment for aggravated assault and battery; and the district court ordered Nixon to pay attorney fees, a sum to the crime victim's compensation fund, and restitution. *Id.* at 868.

[¶ 6]   Nixon filed a notice of appeal on October 31, 1997, from the judgment and sentences, asserting as error the district court's denial of his pre-sentence motion to withdraw his pleas of guilty and the requirement for restitution. *Id.* This Court considered those assertions, found no error, and affirmed Nixon's judgment and sentence in a decision published April 10, 2000. *Id.* at 872. On January 8, 2001, some nine months after this Court's affirmance of Nixon's direct appeal and some three years and three months after the district court's imposition of sentence, Nixon pro se filed his motion to withdraw his pleas of guilty pursuant to W.R.Cr.P. 32(d).

[¶ 7]   In this motion, Nixon again challenged the voluntariness of his pleas of guilty, albeit on grounds different from those asserted in his pre-sentence motion to withdraw his pleas of guilty. This time Nixon's asserted grounds concerned instances of alleged ineffective assistance of trial counsel, specifically whether his trial counsel, and the district court, failed to advise him of any matters in mitigation he could present during the sentencing phase; whether his trial counsel failed to investigate the case and failed to advise him of potential defenses and of strengths and weaknesses of the State's case; whether his trial counsel failed properly to advise him of the sentence he was facing; and whether the above and foregoing errors cumulatively denied him his right to effective assistance of counsel. We note that these claims of ineffective assistance of trial counsel were not raised in Nixon's direct appeal of his conviction, judgment and sentence. *Nixon,* 4 P.3d at 865–66. The district court denied this motion without conducting an

evidentiary hearing. This appeal followed in which Nixon challenges the district court's failure to conduct an evidentiary hearing and the district court's denial of the motion to withdraw guilty pleas.

[¶ 8]   As explained below, this Court's precedent, as well as policy considerations including the interest in the finality of criminal decisions, mandate that such a motion to withdraw a guilty plea, filed after an appeal of right from a judgment and sentence has been concluded, cannot be considered by the district court because of a lack of jurisdiction over such matters. Further, because this Court enjoys no greater jurisdiction than that of the district court in such matters, this Court must dismiss this appeal for lack of subject matter jurisdiction in this Court.

## ANALYSIS

[¶ 9]   Rule 32(d) of the Wyoming Rules of Criminal Procedure addresses the withdrawal of guilty pleas:

> (d) *Plea withdrawal.*—If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

Although this Rule does not, in and of itself, set a time limit for filing such a motion with the district court *after sentencing,* such a limit must exist as a logical corollary to the general rule that a case becomes final after judgment and sentence is entered and an appellate decision affirming the conviction has been made, or the time for taking an appeal expires without perfection of an appeal, or after the voluntary dismissal of such an appeal. *See Schuler v. State,* 771 P.2d 1217, 1220 (Wyo.1989) (citing *Attletweedt v. State,* 684 P.2d 812 (Wyo.1984); *State v. Duswalt,* 153 N.J.Super. 399, 379 A.2d 1278 (1977)), for the proposition that a case is no longer pending after a final judgment (in Wyoming, that is the judgment and sentence) has been entered in the trial court. Unless a *specific, express* exception is created to this general rule by statute or court rule, a dis-

trict court's jurisdiction to consider a motion to withdraw a plea—or any other motion not specifically provided for by statute or rule—ends when the case becomes final because of the expiration of the time for taking an appeal. In sum, once a criminal case becomes final pursuant to the general rule, a trial court loses the power to act in that case unless it is expressly permitted to do so by statute or court rule.

[¶ 10] In fact, this Court and the Wyoming Legislature have provided specific methods in both statutes and court rules for seeking review of prior and otherwise final criminal proceedings. With two exceptions, both confined to challenging the jurisdiction of the trial court—correcting an illegal sentence pursuant to W.R.Cr.P. 35(a) and state habeas corpus relief pursuant to Wyo. Stat. Ann. §§ 1–27–101 et seq.—all available methods contain time limits for taking such actions. For instance, a motion for sentence reduction must be made within one year after the sentence is imposed or probation is revoked, or within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. W.R.Cr.P. 35(b). After expiration of that period, the district court no longer has jurisdiction to reduce a sentence. *Stewart v. State*, 654 P.2d 727 (Wyo.1982).

[¶ 11] Similarly, Wyoming statutes provide two additional avenues for presenting a challenge of a conviction to a district court: by way of the post-conviction relief statutes at Wyo. Stat. Ann. §§ 7–14–101 through 108, and state habeas corpus relief at Wyo. Stat. Ann. §§ 1–27–101 through 134. Review by way of a petition for post-conviction relief must be filed within the five-year limitation period, and the scope of such review is strictly limited. Wyo. Stat. Ann. § 7–14–103 (LexisNexis 2001).

[¶ 12] Review in a state habeas corpus action is not time limited, but is seriously limited in scope so that defendants may only raise a claim going to the subject matter or personal jurisdiction of the court. *Hovey v. Sheffner*, 16 Wyo. 254, 265–67, 93 P. 305, 307–08 (1908). This remedy is also unique in that the petition must be made to the court most convenient in distance to the petitioner. Wyo. Stat. Ann. § 1–27–104 (LexisNexis 2001). In other words, this particular remedy is not even a continuation of the criminal proceeding, but is a separate civil proceeding, so the continuing jurisdiction of the district court in the original criminal action is not of concern.

[¶ 13] In short, except where there has been a remand following an appeal in a criminal case, or where one of the statutes or rules mentioned above otherwise expressly permits a district court to continue to assert jurisdiction over that criminal case, no authority exists for the court to act in the case—and its jurisdiction over the case should end—once the defendant's conviction has become final because of his exercise or forfeiture of his right to appeal from that conviction. *See Frenzel v. State*, 938 P.2d 867, 870 (Wyo.1997) (Thomas, J., dissenting), *cert. denied*, 522 U.S. 959, 118 S.Ct. 388, 139 L.Ed.2d 303 (1997) (recognizing the legislative mandate denying district courts jurisdiction to hear a second petition for post-conviction relief).

[¶ 14] In fact, if this Court were to decide that courts do not lose jurisdiction to hear motions to withdraw guilty pleas after the time for appeal has run, such would seem to create a substantive right which has been expressly denied to criminal defendants by the legislature in the statutes relating to post-conviction relief. Such would clearly be in violation of Wyoming's constitutional provisions relating to the separation of powers.[1]

1. Article 2, § 1 of the Constitution of the State of Wyoming provides:

   The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

That is, unlike the Federal system [2], in Wyoming, the creation of rules which do no more than govern procedures in the courts is exclusively the province of the courts and such rules govern procedure in the courts, while laws conferring substantive rights, such as the availability of post-conviction relief, must come from the legislature. This is a separation of powers issue under the Wyoming Constitution that this Court has long recognized. For instance, in *Squillace v. Kelley*, 990 P.2d 497, 501 (Wyo.1999), this Court found:

> Article 5, § 2 of the Constitution of the State of Wyoming provides in pertinent part that this Court "shall have a general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law." This general superintending control "encompasses the authority to prescribe rules of practice and procedure in those courts." *White v. Fisher*, 689 P.2d [102] at 106 [(Wyo.1984)]. We have consistently upheld this Court's plenary power to control the course of litigation in the trial courts. *Id.* The legislature recognizes these pertinent constitutional provisions which afford this Court full authority over rules of practice and procedure and the Court's inherent power to prescribe rules. Wyo. Stat. Ann. §§ 5-2-114, 115 (LEXIS 1999). The prescription of the practice and procedure attending the imposition of sanctions for the signing and filing of papers with the courts is a procedural, not a substantive, matter. The legislature is prohibited from enacting statutes pertaining to such matter. *White v. Fisher*, 689 P.2d at 107. In Wyo. Stat. Ann. § 1-14-128, the legislature has impermissibly enacted a statute pertaining to a procedural matter; therefore, we hold that this statute is unconstitutional.

*See also, Hopkinson v. State*, 664 P.2d 43, 50 (Wyo.1983), superseded by rule as stated in *Grainey v. State*, 997 P.2d 1035, 1040 (Wyo. 2000) ("This court has approved the proposition that the power to determine what acts are crimes, and the punishment for prohibited acts belongs to the legislative branch as an absolute, exclusive and inherent power not shared with the courts.").

[¶ 15] The Wyoming Legislature has provided a substantive right to re-open otherwise final criminal judgments in creating jurisdiction in district courts over post-conviction review, but it has determined it necessary both to place a time limit on such review and to limit the scope of that review. *See* Wyo. Stat. Ann. §§ 7-14-101 through 108 (LexisNexis 2001). However, such limitations on the substantive right provided to a petitioner under that act, and on the jurisdiction accorded to district courts under the act, would be rendered meaningless if this Court were to permit temporally unlimited challenges to a guilty plea under Rule 32(d).

[¶ 16] If this Court were to permit such challenges, defendants could ignore the limitation of post-conviction relief and bide their time in prison until witnesses are dead or scattered and evidence is lost before seeking identical relief pursuant to Rule 32(d). Moreover, they could do so unencumbered by the res judicata effect, inherent in the post-conviction statutes, of having earlier pursued or declined to pursue their claims in a timely appeal from conviction. Taking the argument to its extreme would also mean no limit exists on the number of such motions which may be filed. Further, "at any time" may include after a defendant's sentence has already been served. In other words, the concept of finality would be rendered a fiction.

[¶ 17] Recognizing the many consequences of allowing a defendant to file a motion to withdraw a guilty plea "at any time," this Court, in a line of orders since March of 1998, has declared that trial courts lack subject matter jurisdiction to entertain a motion to withdraw a guilty plea under W.R.Cr.P. 32(d), if that motion is filed after an appeal of right from a conviction has been concluded, after the time for such an appeal has run and no appeal has been taken, or after such an appeal has been taken but then voluntarily dismissed. *See Harrison v. State*, No. 01-187, Order Denying Petition

---

**2.** In the Federal system, court rules are subject to approval by Congress, the result being that Federal court rules have the force and effect of a legislative enactment. In Wyoming, court rules are issued solely by the courts and are not subject to approval of the legislature.

For Reinstatement As Moot Following Discovery That This Court Lacks Jurisdiction To Entertain This Appeal (Wyo.10/23/2001) (petition for reinstatement of appeal denied; motion to withdraw guilty plea not filed until 20 years after entry of plea); *Springfield v. State*, No. 01–132, Order Dismissing Appeal (Wyo.10/23/2001) (appeal dismissed, as motion to withdraw guilty plea not brought until over 27 years after entry of plea); *Chavez v. State*, No. 99–182, Order Dismissing Appeal for Lack of Jurisdiction (Wyo.10/7/1999) (7 days between lapse of appeal time and motion to withdraw guilty plea); *Pfeil v. State*, No. 99–142, Order Granting Motion To Dismiss Appeal For Lack of Jurisdiction (Wyo.6/29/1999) (motion to withdraw guilty plea filed at least 14 months after right of direct appeal from the judgment and sentence expired); *Rude v. State*, No. 98–302, Order Granting Motion to Dismiss Appeal for Lack of Jurisdiction (Wyo.5/25/1999) (motion for withdrawal of guilty plea filed "some six years after the appellant's direct appeal from the plea in question"); *Watson v. State*, No. 99–14, Order Dismissing Appeal from District Court's Order Denying Motion to Withdraw Guilty Pleas (Wyo.4/7/1999) (21 years between entry of plea and motion to withdraw guilty plea); *Harlow v. State*, No. 98–276, Order Denying Jurisdiction Over Late Filed Motion to Withdraw Guilty Pleas (Wyo.9/22/1998) (10 years lapse between entry of guilty plea and motion to withdraw); *Solis v. State*, No. 97–192, Minute Order of Dismissal (Wyo.4/22/1998) (30 days between voluntary dismissal of appeal and motion to withdraw guilty plea); *Parazoo v. State*, No. 97–193, Minute Order of Dismissal (Wyo.3/4/1998) (12 years between entry of judgment and sentence and motion to withdraw guilty plea). To now hold otherwise would require reversal of the above line of orders.

[¶ 18] It should also be noted that the Court's current position on this subject, as set forth in the line of orders noted above, is entirely consistent with this Court's suggestion—before the adoption of the Rules of Criminal Procedure—that a motion to withdraw a plea must be made "promptly, at the earliest possible moment, or at least within a reasonable time after entry of the plea."

*Hubble v. State*, 41 Wyo. 275, 283, 285 P. 153, 156 (1930) (finding a violation of the "rule of promptness" where the appellant filed a **presentencing** motion to withdraw his plea two years and three months after entry of the plea). Unquestionably, "a reasonable time after entry of the plea" is before the time for appeal expires. Nixon's motion comes over three years after entry of his plea and such cannot even remotely be said to be "reasonable."

[¶ 19] Moreover, if this Court should now choose not to limit the time period for filing a motion to withdraw a guilty plea, contrary to the above-cited line of authority, such a choice would also conflict with this Court's legal precedent that failure to raise an issue on direct appeal waives review of that issue. "It is a long-standing rule of law that issues that could have been raised on appeal are not open to challenge by a petition for post-conviction relief because they are foreclosed by the doctrine of res judicata." *Kallas v. State*, 776 P.2d 198, 199 (Wyo.1989) (citing *Cutbirth v. State*, 751 P.2d 1257, 1261 (Wyo.1988)). Allowing a defendant another shot at an appeal-like proceeding, any number of years after their conviction has become final, would allow an end run around this waiver doctrine.

[¶ 20] Recognizing the importance of finality in criminal proceedings, Rule 32(e) of the Federal Rules of Criminal Procedure has been limited in its reach, as well. F.R.Cr.P. 32(e) provides:

(e) PLEA WITHDRAWAL. If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

[¶ 21] The pre–1983 version of present Rule 32(e) (then Rule 32(d)) provided:

(d) WITHDRAWAL OF PLEA OF GUILTY. A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after

sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

18 U.S.C. app. at 624 (1982).

[¶ 22] In 1983, the last part of the rule was deleted and the phrase "At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. 2255" was added to clarify when such motions may be made after sentencing, as the earlier version seemed to some courts to allow for such "at any time". *See United States v. Watson,* 548 F.2d 1058, 1063 (D.C.Cir.1977) ("It will be noted from the foregoing language of the Rule that there is no limitation upon the time within which relief thereunder may, after sentencing, be sought."). As it now stands, the rule makes it clear that a motion to withdraw guilty plea may only be raised before the imposition of sentence. After that time, the relief earlier available through such a motion may only be sought on direct appeal—which, pursuant to F.R.A.P 4(b), must be initiated within ten days after entry of either the judgment or order being appealed—or pursuant to 28 U.S.C. § 2255, which requires that the petition be filed in the trial court within one year of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.S. § 2255 (2002).

[¶ 23] As noted in the 1983 Advisory Committee Note to Rule 32:

Moreover, because § 2255 and Rule 32(d) are properly characterized as the "two principal procedures for collateral attack of a federal plea conviction," Borman, *The Hidden Right to Direct Appeal From a Federal Conviction,* 64 Cornell L.Rev. 319, 327 (1979), **this amendment is also in keeping with the proposition underlying the Supreme Court's decision in *United State v. Timmreck,* [441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d. 634 (1979),] *supra,* namely, that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."**

F.R.Cr.P. 32 Advisory Committee Note; 18 U.S.C. app. at 799 (1982) (emphasis added).

[¶ 24] The need for finality in criminal cases when a defendant has voluntarily and knowingly agreed to plead guilty has been recognized on a number of occasions by this Court. When considering the circumstances under which a defendant may appeal after entering into an agreement to plead guilty, this Court has recognized the need for finality in holding that an individual may only raise issues concerning either the jurisdiction of the trial court or the voluntariness of the plea. In that regard, this Court has stated:

In reaching this result, we are aware of the argument that, for the sake of judicial economy, a criminal defendant should not be forced to go to trial merely to preserve his right to appeal pretrial objections. *United States ex rel. Rogers v. Warden of Attica State Prison,* 381 F.2d 209 (2d Cir. 1967). However, against that interest, we must weigh the need for finality in the judicial process.

"A guilty plea should mark the end of a criminal case, not a gateway to future litigation. More than a confession, a guilty plea signals defendant's 'intention not to litigate the question of his guilt, and necessarily involves the surrender of certain constitutional rights * * *.' " *People v. Taylor,* 65 N.Y.2d 1, 489 N.Y.S.2d 152, 154, 478 N.E.2d 755, 757 (1985), *quoting People v. Lynn,* 28 N.Y.2d 196, 201–02, 321 N.Y.S.2d 74, 269 N.E.2d 794 (1971).

*Sword v. State,* 746 P.2d 423, 426 (Wyo.1987). In addition, in *Smith v. State,* 871 P.2d 186, 188 (Wyo.1994), this Court noted:

A guilty plea prohibits appellate review of all but a few defenses. *Ochoa v. State,* 848 P.2d 1359, 1361–62 (Wyo.1993); *Sword v. State,* 746 P.2d 423, 425 (Wyo.1987).

> "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

*Davila v. State,* 831 P.2d 204, 206 (Wyo. 1992) (*quoting Zanetti v. State,* 783 P.2d 134, 138 (Wyo.1989) and *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973)).

[¶ 25] Moreover, this Court has recognized the importance of finality in criminal cases in other areas as well. This Court has limited the doctrine of retroactivity in the interests of the finality of a criminal case. *See Farbotnik v. State,* 850 P.2d 594, 602 (Wyo.1993) ("The interest of the State in achieving finality justifies limited retroactivity."); *Brown v. State,* 816 P.2d 818, 847 (Wyo.1991) (Discussing the viability of recanted testimony presented in a motion for a new trial, this Court stated: "But the viability of the system also requires that criminal justice be administered efficiently and that the public have faith in the finality of judgments.").

[¶ 26] This Court has likewise restricted post-conviction review of claims after conclusion of an appeal, in part, because of the importance of finality in a criminal action.

> It is true that we have adopted a disciplined approach to post-conviction relief and have concluded that it is not to be invoked as a substitute for a direct appeal, nor should it be treated like a direct appeal. *Cutbirth v. State,* 751 P.2d 1257 (Wyo.1988); *Pote v. State,* 733 P.2d 1018 (Wyo.1987); *Munoz v. Maschner,* 590 P.2d 1352 (Wyo.1979). The effect of our rulings is to foreclose from consideration under post-conviction relief those questions which could have been presented on direct appeal. **In so doing, we honor the rule of res judicata and promote the concept of finality. This stance is supportive of those considerations of judicial economy which suggest that a review of certain issues is best accomplished by direct appeal.** Furthermore, we limit consideration of post-conviction relief to those motions which raise questions of constitutional magnitude and manifest a miscarriage of justice. *Cutbirth; Wright v. State,* 718 P.2d 35 (Wyo.1986).

*Gist v. State,* 768 P.2d 1054, 1055 (Wyo.1989) (emphasis added).

[¶ 27] We note, too, the societal interests at stake in Wyo. Stat. Ann. § 1–40–204 (LexisNexis 2001), which provides that victims and witnesses of crimes are to be informed during the criminal justice process. For those victims or witnesses who opt to be informed about criminal proceedings relating to the crime in which they were victimized or which they witnessed, § 1–40–204(a)(ii) requires notification to the victim or witness of the status of a case through "the final appellate review." If the phrase "at any time" in Rule 32(d) is construed as Nixon would have this Court construe it, crime victims would effectively be subjected to re-victimization upon notification—20, 30 or 50 years after the crime—that the person that victimized them gets yet another appeal, this time from the denial of his motion to withdraw a guilty plea. Such simply cannot serve to promote **any** sense of finality.

[¶ 28] The detrimental effect of collateral attacks on final judgments has also been noted by the United States Supreme Court:

> Nonetheless, we repeatedly have recognized that collateral attacks raise numerous concerns not present on direct review. Most profound is the effect on finality. **It goes without saying that, at some point, judicial proceedings must draw to a close and the matter deemed conclusively resolved; no society can afford forever to question the correctness of its every judgment.** "The writ," however, "strikes at finality," *McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991), depriving the criminal law "of much of its deterrent effect," *Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989) (plurality opinion), and sometimes preventing the

law's just application altogether, *see* McCleskey, supra, 499 U.S., at 491, 111 S.Ct., at 1468. "No one, not criminal defendants, not the judicial system, not society as a whole is benefitted by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation." *Mackey v. United States,* 401 U.S. 667, 691, 91 S.Ct. 1160, 1179, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part); *see also McCleskey, supra,* 499 U.S., at 492, 111 S.Ct., at 1469.

*Withrow v. Williams,* 507 U.S. 680, 698, 113 S.Ct. 1745, 1756–57, 123 L.Ed.2d 407 (1993) (emphasis added).

[¶ 29]  The United States Supreme Court especially recognizes the particular importance of finality in criminal cases where the defendant has entered into a guilty plea:

> We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review.  "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 2546–2547, 81 L.Ed.2d 437 (1984) (footnote omitted).  And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.  Habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " *Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting *Sunal v. Large,* 332 U.S. 174, 178, 67 S.Ct. 1588, 1590–1591, 91 L.Ed. 1982 (1947)). **Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."** *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

*Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (emphasis added).

[¶ 30]  In sum, the above-noted authorities and policy arguments require the conclusion that the district court lacked jurisdiction to consider Nixon's motion to withdraw his plea, and the further conclusion that the instant appeal must be dismissed for lack of jurisdiction in this Court, for "[n]o one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved." *Williams v. United States,* 401 U.S. 667, 691, 91 S.Ct. 1171, 1179, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part).